CRUZ, Appellant,

v.

SOUTH DAYTON UROLOGICAL ASSOCIATES, INC. et al., Appellees.

[Cite as *Cruz v. S. Dayton Urological Assoc., Inc.* (1997), 121 Ohio App.3d 655.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16021.

Decided July 25, 1997.

*Lee C. Falke, Kenneth A. Lazarus* and *Maggi Lazarus*, for appellant.

*Charles J. Faruki* and *Paul L. Horstman*, for appellees.

---

GRADY, Judge.

This is an appeal from a summary judgment for the defendants on the plaintiff's claim of age discrimination and related claims for relief arising from termination of the plaintiff's employment by the defendants.

Defendant–appellee South Dayton Urological Associates, Inc. ("SDUA") is a professional corporation organized for the practice of medicine by its shareholders, five physicians who specialize in urology. They include Juan Palomar, Samuel Hamway, Sharat Kalvakota, and James Wright, who are also defendants–appellees in this action, and Rafael M. Cruz, the plaintiff–appellant.

Each of the five physician-shareholders of SDUA was or is an employee of the corporation. Each was or is employed pursuant to a written agreement. The agreements provided *inter alia,* that either SDUA or the employee could terminate the employment contract, unilaterally and without specification of cause, upon ninety days' written notice. The contract also provided for the employee's compensation on termination. A separate shareholders agreement required SDUA to repurchase the employee's stock, at book value, after his employment was terminated.

On November 16, 1994, the other four shareholders of SDUA voted to terminate Cruz's employment contract with SDUA. He was given the required notice in writing. Following his termination, Cruz commenced this action against SDUA and the other four shareholders.

This action originally presented eleven claims for relief. The defendants moved for summary judgment on all of the claims, except a claim for an

accounting. Cruz then withdrew four of his claims. The trial court granted summary judgment on all of his remaining claims, except a claim for tortious interference with a business relationship. The court certified there was "no just cause for delay" of an appeal on the summary judgments that it granted. This appeal followed.

First Assignment of Error

"The trial court erred in granting defendants–appellees' motion for summary judgment on plaintiff–appellant's claim for age discrimination."

The first claim for relief in the complaint that Cruz filed alleged that "[t]he major and determinative factor in Defendants' decision to terminate [him] was his age." In that regard Cruz relied on R.C. 4112.02, which prohibits age discrimination in employment, and R.C. 4112.14(A), which identifies persons over age forty as the class protected thereby. He also relies on R.C. 4112.02, which permits a civil action for damages, injunction, or other relief in vindication of age discrimination in employment.

In an age discrimination claim, the plaintiff employee bears the initial burden of establishing a prima facie case of age discrimination. Upon such proof, the burden shifts to the defendant employer to show legitimate, nondiscriminatory reasons for the employer's action. If the employer meets that burden, the employee must then present evidence which demonstrates that those reasons are a pretext for impermissible discrimination. See *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 197–198, 20 O.O.3d 200, 203–204, 421 N.E.2d 128, 131–132. See also *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, paragraph one of the syllabus.

"In *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, this court clarified the methods for establishing a prima facie case of age discrimination under R.C. 4112.14. The methods are the same for R.C. 4112.02, at issue here. Discriminatory intent may be established indirectly by the four-part analysis set forth in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, adopted from the standards established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The *Barker* analysis requires that the plaintiff-employee demonstrate '(1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class.' *Id.*, paragraph one of syllabus.

"Discriminatory intent may also be established by direct evidence of age discrimination, which is evidence other than the four-part demonstration of

*Barker. Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. A plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent. *Mauzy,* 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph one of the syllabus." *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128–129, 672 N.E.2d 145, 148.

■ The defendants argued in their motion for summary judgment that, at trial, Cruz could not meet his initial burden of establishing a prima facie case of age discrimination. More specifically, they claimed that the evidence would not demonstrate, directly or circumstantially, a discriminatory intent on their part in terminating him.

It is undisputed that Cruz, who was sixty-four years of age when he was terminated by SDUA, was a member of the statutorily protected class. It is also undisputed that he was qualified for the position from which he was discharged. It is also undisputed that he was discharged. The issue in dispute is the fourth prong of the *Barker* test, whether Cruz was replaced by, or his discharge permitted the retention of, a person not belonging to the protected class.

No additional physician was hired by SDUA after Cruz was terminated. Of the physicians remaining only one, Wright, was then less than forty years of age. Wright had then been employed by SDUA for several years. His gross receipts for the prior years exceeded $600,000.

In opposition to defendants' motion, Cruz presented evidence demonstrating that after he was terminated by SDUA, Wright assumed Cruz's former patient load at SDUA's Greenville office, which had constituted a substantial portion of Cruz's practice. He also submitted a newspaper announcement published by SDUA that announced Cruz's departure and stated that "continuing care will be provided by James D. Wright, M.D." Cruz also offered the deposition testimony of Rhonda Whitney, a nurse employed by SDUA, who, when asked which of the remaining physicians took over Cruz's practice, stated:

"Probably Dr. Wright ended up getting most of them only because at the time he was just starting out and had more availability to appointments when the patients would call in and want to make an appointment."

In granting the defendants' motion for summary judgment, the trial court concluded that Cruz had failed to present evidence establishing the fourth prong of the *Barker* test. The court stated:

"No specific facts have been alleged that a new qualified employee was hired by SDUA to replace Dr. Cruz after his termination. The only qualified employee of SDUA not belonging to the protected class is Dr. Wright. Although Dr. Wright had only been an employee of SDUA for approximately three years prior

to Dr. Cruz's termination, there exists no question that Dr. Wright had developed his own patient base and that Dr. Wright had sufficient responsibilities to justify his employment whether or not Dr. Cruz's employment was terminated. Therefore, Defendants are entitled to Summary Judgment on Plaintiff's claim of age discrimination because Plaintiff has failed to meet his burden of alleging specific facts to raise a genuine issue of material fact on an essential element of his claim."

Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

The moving party cannot discharge its burden by making a conclusory statement that the nonmoving party has no evidence to prove its case, but must point to some evidence which, if true, requires a judgment for the moving party on one or more issues of fact determinative of the nonmoving party's claim for relief or affirmative defense. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The nonmoving party must then preserve the factual dispute concerning that issue by setting forth specific facts which, if true, keep it in dispute. *Id.*

All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is *de novo.*" *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552, 671 N.E.2d 317, 320.

■ We agree that there is no evidence that Wright would not have been retained by SDUA but for its termination of Cruz. However, there is evidence that after his termination Cruz was replaced at SDUA by Wright. In the context in which the *Barker* test is applied, "replacement" is the substitution of an employee not belonging to the protected class for an employee who is a member of it. It does not require a "new hire" to accomplish that substitution, which may as well occur when duties or responsibilities are transferred to another person already employed. To hold otherwise would permit an employer to escape the implication of discriminatory intent permitted by *Barker,* and to defeat the

purposes of R.C. 4112.02, simply by hiring a replacement before committing a discriminatory discharge. We believe that that is inconsistent with the purposes of the statute.

Cruz argues that he presented direct evidence of discriminatory intent on the part of defendants when they discharged him, which avoids recourse to the circumstantial tests of *Barker*. We agree that the *Barker* test need not be applied when direct evidence is offered. However, we need not consider whether Cruz offered direct evidence, having found that the trial court erred in applying the *Barker* test as it did.

The first assignment of error is sustained.

Second Assignment of Error

"The trial court erred in granting defendants–appellees' motion for summary judgment on plaintiff–appellant's claim for breach of fiduciary duty."

"Generally, majority shareholders have a fiduciary duty to minority shareholders." *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 108, 548 N.E.2d 217, 220. "Ohio appellate courts have found a heightened fiduciary duty between majority and minority shareholders in a close corporation. This duty is similar to the duty that partners owe one another in a partnership because of the fundamental resemblance between the close corporation and a partnership." *Id.* The duty is one of the utmost good faith and loyalty. *Id.* "Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable." *Id.* at paragraph two of the syllabus.

In *Gigax v. Repka* (1992), 83 Ohio App.3d 615, 615 N.E.2d 644, this court concluded that a minority shareholder employee in a close corporation was not an at-will employee terminable at any time by the majority shareholders. *Id.* at 623, 615 N.E.2d at 649–650. Instead, "[t]he fiduciary duty which the partners owe each other requires that the removal of a partner be based on legitimate business reasons." *Id.* However, in *Gigax*, the minority shareholder employee had not entered into an employment contract with the corporation that permitted his termination without cause.

In *Leigh v. Crescent Square, Ltd.* (1992), 80 Ohio App.3d 231, 608 N.E.2d 1166, this court examined a partnership agreement to determine whether the concept of fiduciary duty required that a partner be notified by his partners of expulsion proceedings being instituted against him. We concluded that "the concept of fiduciary duty does not require * * * 'an expulsion clause to be construed so as to require notice, hearing, or a showing of cause where the clause contains no

express requirement of such formalities.' Annotation (1985), 72 A.L.R.3d 1226, 1229." *Id.* at 239, 608 N.E.2d at 1171.

Cruz claimed that the other shareholders of SDUA breached the fiduciary duty which they owed him in three respects: in terminating him without a legitimate business reason, in the manner in which he was terminated, and by reallocating overhead expenses for 1994 to his financial detriment.

A fiduciary duty is a common-law duty. As with any such duty, the obligor may be relieved of it by the obligee who would benefit from its performance.

When Cruz agreed that SDUA could terminate him without specification of cause, he relieved SDUA and the other shareholders of any duty they owed him to exercise their power of termination only for good cause. In so doing, Cruz waived his right to argue that the defendants breached their fiduciary duty to him because they lacked a legitimate business reason for their action.

Cruz also claimed a breach of fiduciary duty with respect to the manner of his termination. He does not claim that the defendants owed him some different form of process, but that they owed him a duty to be fair and forthright in their dealings leading to his termination. He argues that they breached that duty by acts of duplicity. That claim, which is akin to fraud, is independent of whether the defendants were required to have good cause in order to terminate him.

Cruz also claimed a breach of fiduciary duty with respect to a reallocation of overhead expenses by the remaining shareholders. Like the manner of his termination, this claim presents issues independent of the question of cause. Even though the other shareholders of SDUA had the power to terminate Cruz without specification of cause, their exercise of that power was governed by a fiduciary duty, to the extent that it affected the value of his accrued interests in their common venture.

The trial court granted the defendants' motion for summary judgment as to the breach of fiduciary duty claim in its entirety. For the reasons stated above, the summary judgment will be reversed to the extent that the claim was grounded on the manner in which Cruz was terminated and the reallocation of overhead expenses.

The second assignment of error is sustained in part and overruled in part.

Third Assignment of Error

"The trial court erred in granting defendants–appellees' motion for summary judgment on plaintiff–appellant's claim for wrongful discharge based on age discrimination and/or breach of fiduciary duty."

■ "In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort." *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph three of the syllabus. Cruz contends that his termination by SDUA was wrongful because it was in violation of sufficiently clear public policy as expressed in Ohio's statutory law concerning age discrimination and in Ohio's common law concerning fiduciary duty.

■ "Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.* at paragraph one of the syllabus. "Henceforth, the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy." *Id.* at paragraph two of the syllabus. " 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.

This assignment of error is closely allied to Cruz's first assignment of error and to that portion of his second assignment of error that alleges that the defendants breached a fiduciary duty to Cruz by terminating him. Our resolution of those two assignments of error dictates the resolution of this assignment of error.

■ In our disposition of Cruz's first assignment of error we concluded that a genuine issue of material fact existed as to whether Cruz's discharge violated Ohio's age discrimination statutes. That same question of fact requires us to reverse the trial court's grant of summary judgment to the defendants on Cruz's wrongful discharge tort claim, to the extent that claim is based on a violation of Ohio's age discrimination statutes.

■ In our disposition of Cruz's second assignment of error we concluded that the defendants breached no fiduciary duty they owed to Cruz by terminating him. Regardless of whether the common-law concept of fiduciary duty constitutes a "clear public policy" sufficient to justify an exception to the employment-at-will doctrine, a tort claim alleging a breach of fiduciary duty necessarily fails when no fiduciary duty exists. Accordingly, the trial court did not err in granting summary judgment to the defendants on Cruz's wrongful discharge tort claim, to the extent that claim is based on an alleged breach of fiduciary duty.

The third assignment of error is sustained in part and overruled in part.

Fourth Assignment of Error

"The trial court erred in granting defendants–appellees' motion for summary judgment on plaintiff–appellant's attendant claims for civil conspiracy and conversion."

 "In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 292, 629 N.E.2d 28, 33; see, also, *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645.

 In its decision granting summary judgment to the defendants on Cruz's civil conspiracy claim, the trial court concluded that Cruz's "contention that the other doctors conspired to breach age discrimination laws is insupportable because there was no such breach." The trial court also concluded that "the removal of Dr. Cruz by the other Doctors as Directors of SDUA cannot be considered as malicious because it is an ordinary management decision."

 Our finding that the trial court erred in granting summary judgment for the defendants on the age discrimination claim necessarily requires us to hold that the trial court erred when it found that no violation of the age discrimination laws could be proved. That remains for determination. Inasmuch as that contention was the sole basis for the defendants' motion for summary judgment, Cruz was not required to present evidence demonstrating the malice prong of the conspiracy test. *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264. The trial court therefore erred when it granted summary judgment on the civil conspiracy claim on a finding that no malice could be demonstrated on the evidence that was presented.

 "A conversion is recognized as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 93, 24 OBR 160, 162, 493 N.E.2d 289, 292. Cruz alleged that by terminating his employment "without cause and for prohibited purposes, Defendants have wrongfully gained dominion over and converted to their own use, to the exclusion of Dr. Cruz, certain income and property rights in valuable assets and goodwill of SDUA properly belonging to Dr. Cruz." In their motion for summary judgment, the defendants presented testimony in which Cruz explained that the property he claimed was converted by the defendants was his "interest" in the corporation.

We agree that the defendants are entitled to summary judgment on Cruz's conversion claim. Even if the defendants acted wrongfully when they terminated Cruz, their action did not deprive him of personal property or his interests in it.

His shares in the corporation remain in his name. His right to compensation upon termination is unchallenged. The reallocation of overhead expenses for 1994 was within the power of the defendants to order. If it was unreasonable or overbearing, Cruz may obtain relief for that alleged wrong pursuant to his breach of fiduciary duty claim.

The fourth assignment of error is sustained with respect to the civil conspiracy claim but overruled with respect to the conversion claim.

### Conclusion

Having sustained the first assignment of error in its entirety and the remaining assignments of error in part, the cause will be remanded to the trial court for further proceedings on the claims for relief involved and any other claims for relief remaining for determination.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.