OPINION
{¶ 1} Douglas L. Heiser appeals from the judgment of the Lake County Common Pleas Court, which denied Heiser's motion for partial summary judgment and granted in part appellees' motion for summary judgment. Heiser also appeals from the common pleas court's judgment following a bench trial. We affirm in part, reverse in part, and remand.
 {¶ 2} Heiser was the managing partner of Heiser Jesko, Inc. ("H J"), an accounting firm. H J was a close corporation with six shareholders. Heiser was the most senior shareholder.
 {¶ 3} Heiser had a serious and longstanding drinking problem that affected his work and the morale at H J. In late 2000 several of the younger shareholders met with Donald Jesko (the second most senior shareholder) to discuss their concerns about Heiser; they threatened to leave the firm if changes were not made.
 {¶ 4} In January 2001, the shareholders retained a substance abuse consultant, Joe Lencewicz, to advise them on dealing with Heiser's problem. Following Lencewicz's advice, the shareholders staged an intervention.
 {¶ 5} On February 23, 2001, the shareholders met with Heiser at a local hotel. There they advised Heiser that his conduct was unacceptable and presented him with a letter that stated;
 {¶ 6} "Please be advised that after considerable deliberation by a majority of the shareholders of Heiser Jesko, Inc.[,] we have determined that your actions, behavior and professional conduct are unacceptable and intolerable and are adversely affecting the professional reputation and standing of Heiser Jesko, Inc.[,] both internally and externally. These unacceptable actions, behavior and professional conduct appear to be related to your excessive consumption and abuse of alcohol during working and non-working hours. Therefore, we a majority of the shareholders of Heiser Jesko, Inc.[,] demand that you immediately cease such action, behavior and conduct.
 {¶ 7} "As a direct result of your unacceptable actions, behavior and conduct we will proceed with the terms of expulsion pursuant to the provisions of the Close Corporation Agreement dated December 15, 1997 unless you agree to enter an accredited `Substance Abuse Program' that is agreeable to a majority of the shareholders and that you thereafter conform in all respects to the program's requisites."
 {¶ 8} The other five shareholders signed the letter.
 {¶ 9} Heiser agreed to enter a substance abuse program and was immediately driven to the Rosary Hall Chemical Dependency Center at St. Vincent Charity Hospital in Cleveland. Heiser was at Rosary Hall from February 23 to 27. While there, Heiser underwent a chemical dependency assessment and detoxification.
 {¶ 10} On February 24, 2001, the five shareholders presented Heiser a letter stating that effective that date Jesko was elected managing partner and that other shareholders were assuming the duties of secretary, treasurer, and head of accounting and auditing functions. Heiser was relieved of all responsibilities for the day-to-day operation of the firm. The other shareholders took this action to facilitate Heiser's entrance into a residential treatment program.
 {¶ 11} The staff of Rosary Hall diagnosed Heiser as alcohol dependent with physiological dependency. Heiser was also diagnosed as suffering from alcohol withdrawal. Heiser was rated as having a high risk of withdrawal, high level of resistance to treatment, high relapse potential, and high level of environmental dysfunction. Rosary Hall's recommended treatment was short term residential or detoxification.
 {¶ 12} Heiser refused to enter a residential treatment program as recommended by Rosary Hall and as desired by the other shareholders. On February 27, 2001, the other shareholders met and voted to expel Heiser from the firm and presented Heiser a letter to this effect. The letter stated, "You are hereby expelled from Heiser Jesko, Inc.[,] for cause and relieved of all corporate offices held by you and all authority to conduct any corporate business is hereby revoked." The letter also demanded that Heiser adhere to the terms of the non-competition agreement contained within the close corporation agreement and surrender all company property.
 {¶ 13} Following his expulsion, Heiser filed the instant action against appellees, alleging ten counts: (1) breach of fiduciary duty and loyalty, (2) civil conspiracy, (3) disability discrimination, (4) intentional interference with business relations, (5) wrongful discharge, (6) intentional infliction of emotional distress, (7) breach of contract, (8) defamation, (9) unjust enrichment, and (10) declaratory judgment/accounting. Appellees filed a counterclaim alleging causes of action for breach of contract and interference with business relations.
 {¶ 14} Heiser moved for summary judgment on count seven of his complaint (breach of contract) and on appellees' counterclaims. Appellees moved for summary judgment on all of Heiser's claims. The trial court denied Heiser's motion for summary judgment and granted appellees' motion for summary judgment as to counts one through six, and on counts eight, and nine. The trial court granted appellees' motion for summary judgment on count seven except on the issue of whether appellees had commenced paying Heiser for his shares as mandated by the close corporation agreement. The trial court granted appellees' motion for summary judgment as to count ten on Heiser's claim for declaratory judgment and for an accounting of AIA Investments #2 (AIA was a partnership which included the shareholders of H J and that owned the property containing H 
J's offices); but denied appellees' motion for summary judgment as to count ten on Heiser's claim for an accounting of H J. The trial court also granted appellees partial summary judgment on their counterclaim even though appellees had not moved for summary judgment on these claims.
 {¶ 15} The remaining issues proceeded to a bench trial. The parties stipulated that Heiser was entitled to an accounting of H J. Appellees dismissed their counterclaim without prejudice after the parties agreed any damages caused by Heiser's breach of the non-compete agreement would be offset against any amounts owed by appellees to Heiser. The trial court then put on a judgment and opinion that awarded H J judgment in the amount of $16,738.17.
 {¶ 16} Heiser filed a timely appeal of the trial court's judgments setting forth ten assignments of error.
 {¶ 17} Heiser states his first and second assignments of error as:
 {¶ 18} "[1.] The trial court erred by failing to comply with Civil Rule 56(C) when it failed to view the facts most favorably to Heiser, ignored testimony contrary to its own factual findings, and weighed evidence improperly in determining summary judgment and denying reconsideration.
 {¶ 19} "[2.] The trial court erred in granting defendants' motion for summary judgment on Heiser's claim for breach of contract (Count 7) and by denying Heiser's own motion for summary judgment on that claim."
 {¶ 20} We review a grant of summary judgment de novo,[1] i.e., independently and without deference to the trial court's determination.[2] Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party.[3] "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims."[4] If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ. R. 56(E) to set forth facts showing there is a genuine issue for trial.[5]
 {¶ 21} The close corporation agreement provided Heiser could only be terminated for cause. It provided in relevant part:
 {¶ 22} "A Shareholder shall be expelled for cause when it has been determined by unanimous vote of other Shareholders that any of the following reasons for his expulsion exist:
 {¶ 23} "* * *
 {¶ 24} "B. Professional misconduct or intentional violation of the code of professional ethics.
 {¶ 25} "C. Action that injured the professional standing of the firm, if such action continues after its desistence is requested by the managing partner, or by a majority or Shareholder vote."
 {¶ 26} Heiser argues appellees breached the close corporation agreement by expelling him from the firm after he stopped drinking. Appellees argue Heiser was still at risk for relapse and that he was properly expelled under section C because he refused to enter the residential treatment program. Alternatively, appellees contend they were justified in expelling Heiser for professional misconduct under section B.
 {¶ 27} Where the terms of a contract are clear and unambiguous, we will not in effect create a new contract by finding intent not expressed in the clear language employed by the parties.[6]
 {¶ 28} With respect to section C, a genuine issue of material fact exists as to whether Heiser was properly expelled from the firm. Section C permitted appellees to expel Heiser if they asked him to stop action harmful to the firm and he continued the conduct. Here, Heiser presented evidence he stopped drinking when he entered Rosary Hall on February 23, 2001. He presented evidence he had not consumed alcohol after that time. There seems to be no dispute that between February 23 and 27 he did not drink and that after February 23, he did not take action detrimental to the firm.
 {¶ 29} Appellees presented evidence that they were concerned about Heiser's likelihood of relapse and his refusal to enter residential treatment as requested. Appellees contend such were grounds to terminate Heiser under section C. We disagree. First, the close corporation agreement does not grant appellees the authority to expel Heiser based on his potential future conduct. If Heiser had continued the objectionable conduct after being asked to stop, appellees would have been able to expel him for cause under section C. They could not expel him based on their speculation as to what his future conduct would be.
 {¶ 30} Second, nothing in section C or the remainder of the close corporation agreement grants appellees authority to condition Heiser's continued employment on entering any rehabilitation program. All the remaining shareholders could do was demand Heiser stop drinking in a manner that caused injury to the professional standing of the firm. If Heiser did so, he could not be expelled under section C, whether he did so on his own or by other means of his or appellees' choosing. Heiser's sole obligation under the clear language of the agreement was to stop the conduct. Appellees' sole authority was to expel Heiser if he failed to do so.
 {¶ 31} Heiser also presented sufficient evidence of a dispute as to a genuine issue of material fact as to whether he was properly expelled under section B.
 {¶ 32} Appellees argue Heiser's alcohol abuse constituted professional misconduct and violated The Code of Professional Conduct of the American Institute of Certified Public Accountants. While arguably this is true, the wording of the letter presented to Heiser on February 23, 2001 indicated the shareholders were expelling Heiser under section C rather than B. The letter states "* * * your actions, behavior and professional conduct are unacceptable and intolerable and are adversely affecting the professional reputation and standing of Heiser Jesko, Inc." Appellees then made a demand that Heiser cease such "action, behavior and conduct." Thus, a genuine issue of material fact exists as to whether appellees properly expelled Heiser under the terms of the close corporation agreement.
 {¶ 33} Appellant's second assignment of error has merit.
 {¶ 34} Heiser's third assignment of error states, "The trial court erred by granting summary judgment against Heiser on Defendant's counterclaim." Under this assignment Heiser argues the trial court erred in granting appellees summary judgment on their counterclaims because appellees did not move for summary judgment on these claims. This issue is moot because appellees voluntarily dismissed their counterclaims.
 {¶ 35} Heiser's fourth assignment of error states, "The trial court erred in granting defendants' motion for summary judgment on Heiser's
discrimination claim (Count 3) and in denying Heiser's motion for reconsideration, where the facts, when construed most strongly for Heiser, established a prima facie case of disability discrimination and adequately rebutted defendants' pretextual motive."
 {¶ 36} To establish a prima facie case of disability discrimination a plaintiff must show three things: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question."[7] If the plaintiff establishes a prima facie case of handicap discrimination, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the action taken.[8] If the employer establishes a nondiscriminatory reason for the action taken, then the employee must show the employer's stated reason was a pretext for impermissible discrimination.[9]
 {¶ 37} Alcoholism is a handicap under R.C. 4112.01(A)(13).[10]
Heiser presented evidence he was expelled based at least in part on his alcoholism; specifically, his refusal to enter a residential treatment program and the shareholders' fear of relapse. Heiser also presented evidence, in the form of an affidavit from an expert, that he could safely and substantially perform his job function after his release from Rosary Hall.
 {¶ 38} Thus, the burden shifted to appellees to demonstrate a non-discriminatory reason for Heiser's expulsion. Appellees argue three non-discriminatory reasons justified their decision to terminate Heiser: (1) professional misconduct and violations of professional ethics; (2) his excessive alcohol consumption negatively impacted Heiser's professional conduct and tarnished H J's image in the community; and (3) because Heiser refused to follow all recommendations including undergoing residential treatment.
 {¶ 39} The difficulty for appellees with these arguments is that, as we discussed under Heiser's second assignment of error, a genuine issue of material fact exists as to whether Heiser engaged in professional misconduct or violated the code of ethics, and if so, if these were the reasons he was terminated. Heiser presented evidence he had stopped drinking and engaging in conduct that would harm H J's reputation by the time he was fired on February 27, 2001, and the shareholders lacked authority to demand Heiser enter a residential treatment program. Thus, a genuine issue of material fact exists as to whether appellees demonstrated a non-discriminatory reason for Heiser's expulsion.
 {¶ 40} Even if appellees demonstrated a non-discriminatory reason for Heiser's expulsion, Heiser then had the opportunity to demonstrate the reason was pretextual.
 {¶ 41} Viewing the evidence in the light most favorable to Heiser, as we must, a genuine issue of material fact exists as to whether Heiser was expelled because of his alcoholism, and whether he was able to safely and substantially perform his job function following his release from Rosary Hall. A genuine issue of material fact also exists as to whether appellees demonstrated a nondiscriminatory reason for Heiser's expulsion.
 {¶ 42} Appellant's fourth assignment of error has merit.
 {¶ 43} Heiser states his fifth assignment of error as, "The trial court erred in granting defendants' motion for summary judgment by requiring Heiser to prove he was a `recovered' alcoholic to satisfy the second chance provision of the Close Corporation Agreement and establish discrimination."
 {¶ 44} In this assignment of error, Heiser's challenges the trial court's grant of summary judgment in favor of appellees' on his breach of contract and discrimination claims; these are the same counts addressed under Heiser's second and fourth assignments of error. As we have already determined the trial court erred in granting summary judgment on these claims and based on our analysis of Heiser's second and fourth assignments of error, Heiser's fifth assignment of error has merit.
 {¶ 45} Heiser states his sixth assignment of error as: "The court erred by granting defendants' motion for summary judgment on Heiser's claim for breach of fiduciary duty (Count 1)."
 {¶ 46} Heiser argues appellees breached their fiduciary duty to him by not being fair and forthright. As evidence, Heiser points to the shareholders conducting "secret" meetings where they elected and removed shareholders and expelled him. For the reasons set forth in our analysis of Heiser's seventh assignment of error, this assignment of error lacks merit.
 {¶ 47} Also under his sixth assignment of error, Heiser points to evidence he presented that the other shareholders calculated what it would cost them to buy him out; and they then discovered they could reduce this amount by fifty percent by expelling him for cause. However, under the clear terms of the close corporation agreement, the only way the remaining shareholders could oust Heiser was by terminating him for cause, thus this "conspiracy" argument is without merit.
 {¶ 48} Heiser's seventh assignment of error states: "The trial court erred in granting summary judgment when it concluded that the Close Corporation, whose Agreement is silent on notice and meeting procedures, is not subject to [the] notice requirements of R.C. 1701.41."
 {¶ 49} Heiser argues he failed to receive notice of the shareholders meetings at which the other shareholders determined to confront him about his drinking problem, elected a new managing partner, and secretary/treasurer, and voted to expel him. Heiser argues that because he did not receive notice of these meetings, any action taken during those meetings is void abinitio. We disagree.
 {¶ 50} The close corporation agreement clearly indicates the remaining shareholders may conduct a meeting regarding the ouster of another shareholder without notice to that shareholder. The agreement states, "A Shareholder shall be expelled for cause when it has been determined by unanimous vote of other Shareholders * * *." Once the decision to expel a shareholder was made, the remaining shareholders were required to give written notice of this action.
 {¶ 51} Also, with respect to the decision to demand Heiser cease his drinking, the agreement allows expulsion after "desistance is requested * * * by a majority or Shareholder vote." Thus, with respect to the meetings of February 23 and 27, 2001, Heiser was not entitled to notice per the terms of the close corporation agreement. "Absent explicit provisions in a partnership agreement requiring advance notice to a party being removed, we do not find that such notice is implicit in an expulsion provision. We will not imply or add additional terms to an agreement."[11]
 {¶ 52} Further, Heiser cannot demonstrate the outcome of the February 24 meeting (or the other two for that matter) would have been different had he received notice.[12]
 {¶ 53} Heiser's seventh assignment of error is without merit.
 {¶ 54} Heiser's eighth assignment of error states, "The trial court erred in granting summary judgment on Heiser's claims for intentional interference with business (Count 4), conspiracy (Count 2), and termination in violation of public policy (Count 5)."
 {¶ 55} In this assignment of error, Heiser argues the trial court erred in granting summary judgment on these claims because its decision was based on its erroneous determination he was not fired in violation of the close corporation agreement.
 {¶ 56} "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom."[13] Heiser has presented a genuine issue of material fact as to his interference claim. There is evidence from which reasonable minds could conclude appellees took the intentional action (Heiser's expulsion), which caused Heiser's breach or termination of relationships with his former clients because of the non-compete agreement.
 {¶ 57} A civil conspiracy is "`a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'"[14] Because Heiser has demonstrated a genuine issue of material fact as to whether he was wrongfully terminated, the trial court erred when it concluded Heiser could not prove an unlawful act.[15] However, Heiser failed to present any evidence appellees acted with malice in terminating his employment. Therefore, the trial court properly granted summary judgment on Heiser's civil conspiracy claim.
 {¶ 58} "To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a `clear public policy.'"[16]
 {¶ 59} "`Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."[17]
 {¶ 60} Again, the trial court's decision granting summary judgment in favor of appellees on Heiser's public policy claim was based on its incorrect determination that no genuine issue of material fact existed on Heiser's breach of contract and discrimination claims. Therefore, the trial court erred in granting summary judgment on this claim.
 {¶ 61} Heiser's eighth assignment of error has merit with respect to his claims for interference with a business relationship and termination in violation of public policy. Heiser's eighth assignment of error is without merit on his civil conspiracy claim.
 {¶ 62} Heiser's ninth assignment of error states: "The trial court erred by granting summary judgment on the wrongful reduction of Heiser's partnership interest (Count 10)."
 {¶ 63} In this assignment of error, Heiser argues a genuine issue of material fact exists as to whether appellees wrongfully reduced his partnership interest in AIA. We disagree.
 {¶ 64} There is no dispute that Heiser is still a partner in AIA, nor that he has failed to make the payments required to maintain his partnership interest. While H J did make payments relating to the AIA partnership on behalf of shareholders, it was under no obligation to do so.
 {¶ 65} Further, Heiser fails to direct us to any record evidence in support of his argument under this assignment of error as required by App. R. 16(A)(7).
 {¶ 66} Appellant's ninth assignment of error is without merit.
 {¶ 67} Heiser's tenth assignment of error states: "The trial court erred in determining the accounting."
 {¶ 68} In this assignment of error, Heiser argues that because he was wrongfully terminated, the accounting was incorrect. Because we have determined that a genuine issue of material fact exists as to whether Heiser was properly terminated and on several of Heiser's claims flowing from that decision, Heiser's tenth assignment of error has merit.
 {¶ 69} Heiser's first assignment of error is moot as the issues raised in it are implicitly addressed in our analysis of his remaining nine assignments of error.
 {¶ 70} For the foregoing reasons the judgment of the Lake County Common Pleas Court is affirmed with respect to assignments of error six, seven, and nine; the judgment is affirmed with respect to assignment of error eight on count two (civil conspiracy); the judgment is reversed with respect to assignments of error two, four, five, and ten. The judgment is reversed with respect to assignment of error eight on count four (interference) and count five (public policy); assignments of error one and three are moot. Therefore, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded for proceedings consistent with this opinion.
Ford, P.J., concurs,
Grendell, J., dissents with Dissenting Opinion.
[1] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[2] Lexford Properties Mgmt., L.L.C. v. Lexford Properties Mgmt., Inc.,147 Ohio App.3d 312, 315.
[3] Harless v. Willis Day Warehousing, Co. Inc. (1978), 54 Ohio St.2d 64,66.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[5] Id.
[6] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246.
[7] Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, at paragraph one of the syllabus.
[8] Id. at 302, citing Plumbers Steamfitters Joint ApprenticeshipCommt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197.
[9] Id. citing Plumbers Steamfitters Joint Apprenticeship Commt.,
supra, 66 Ohio St.2d at 198.
[10] Hazlett v. Martin Chevrolet, Inc. (1986), 25 Ohio St.3d 279, at syllabus.
[11] Leigh v. Crescent Square Ltd. (1992), 80 Ohio App.3d 231, 235.
[12] Endres Floral Co. v. Endres (1995), 72 Ohio St.3d 526, 530.
[13] Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.,156 Ohio App.3d 575, 2004-Ohio-1661, at ¶ 57, citing Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.,148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 23.
[14] Kenty v. Transamerica Premium Ins. (1995), 72 Ohio St.3d 415, 419
quoting LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121,126.
[15] Cruz v. South Dayton Urological Assoc. Inc. (1997),121 Ohio App.3d 655, 665.
[16] Painter v. Graley (1994), 70 Ohio St.3d 377, at paragraph two of the syllabus, 1994-Ohio-334.
[17] Id. at paragraph three of the syllabus.