OPINION
Tamatha Parker is appealing from the summary judgment rendered by the trial court in favor of Bank One, N.A., Banc One Corporation, and Bank One, PLCS.[1]
The facts and issues involved in this case are thoroughly set forth by the decision, entry and order of the trial court in rendering summary judgment in favor of the defendants, which, in relevant portions, is as follows:
 I. STATEMENT OF THE CASE This case arises out of Plaintiff's claims for pregnancy and sexual discrimination, retaliation and intentional infliction of emotional distress related to the alleged termination of her employment with Bank One, PLCS. Defendant Bank One now moves for judgment as a matter of law.
Bank One describes the operative facts as follows. Plaintiff began work for Bank One on February 28, 1994 as a representative in the promotional support unit of Bank One's private label credit card business. In June 1996, she was promoted to National Sales Representative ("NSR"). Prior to that promotion, Plaintiff made a complaint to the human resources department of Bank One that she was being sexually harassed by her supervisor, Doug Harvey. An internal investigation resulted in disciplinary action being taken against Mr. Harvey. Bank One also concluded that Plaintiff had been unfairly denied a promotion by Mr. Harvey and she was promoted to the NSR position.
Plaintiff held the NSR position when she took medical leave from work due to complications with her pregnancy and childbirth beginning December 12, 1997. Plaintiff learned she was pregnant in June 1997 with a due date in January 1998 and requested the necessary paperwork for obtaining maternity leave. Her leave of absence was eligible for coverage under both the Family Medical Leave Act, 29 U.S.C. 2601 et seq. ("FMLA") and Bank One's short-term disability policy. Plaintiff submitted the necessary paperwork and received documents explaining Bank One's leave policies which provide for a 12-week FMLA leave and short-term disability coverage to run concurrently. Plaintiff originally intended to take her 12-week leave beginning in January 1998 and ending in April 1998. On December 12, 1997, however, Plaintiff was excused from work by her doctor due to back problems related to her pregnancy. Plaintiff revised her paperwork to establish an earlier start date. Plaintiff's FMLA leave began to run on December 12, 1997, as the documentation relating to her leave request explained. That leave period expired on March 6, 1998.
At the expiration of that leave period, under Bank One's established practice, a form letter was sent from the human resources department to Plaintiff stating that her FMLA leave had expired. At about the same time as Plaintiff's leave expired, work volume in Plaintiff's department had increased and the department supervisor determined that Plaintiff's position could not be held open. That supervisor, Mona Mikhail, contacted Donna Willis in Bank One's human resources department and reported that concern. A letter was thereafter sent to Plaintiff on March 13, 1998 which advised her that it was necessary to fill her position due to her need to continue on medical leave beyond the 12-week leave period. Plaintiff was further advised that when she was released to return to work by her physician, she would be given 60 days to find a comparable position with Bank One and that Bank One would make every effort to assist her find such a position. If at the end of that 60-day period, no comparable position had been offered to her, then her employment with Bank One would be terminated. The letter also requested that Plaintiff advise the human resources department as soon as possible with her expected return date and provided a number for Plaintiff to call if she had any questions.
Plaintiff believed that upon receipt of this letter she had been terminated. Bank One asserts that Plaintiff was not terminated, but remains an employee on "inactive" status. After receiving the letter, Plaintiff spoke with Jaclyn Sexton, who had replaced Ms. Mikhail as Plaintiff's supervisor. Plaintiff's position had been posted, but had not yet been filled and Ms. Sexton preferred to have Plaintiff return to work than hire a new employee. As a result, Ms. Sexton called Plaintiff at home to discuss her return to work. That conversation was cut short by Plaintiff to attend to her baby and she made no further attempt to contact Ms. Sexton or any other Bank One management representative. Bank One hired Eric Gilmore to fill the vacant NSR position in May 1998.
Plaintiff's version of events is rather different. She alleges that in early 1996, she was sexually harassed by her supervisor, Doug Harvey. After making a formal complaint, an investigation was conducted and Mr. Harvey received only limited discipline. He was later promoted and given a pay raise and Ms. Parker alleges that she was subject to retaliation by Mr. Harvey for the filing of the complaint.
According to Ms. Parker, this retaliation took the form of Mr. Harvey becoming "nasty" toward her, stopping her from "getting credit for profitable deals," making her feel inadequate and influencing Ms. Parker's co-workers to "have a problem" with her. Ms. Parker acknowledges that, following the investigation, she was promoted to a position which she had been denied by Mr. Harvey.
In June 1997, Ms. Parker learned she was pregnant and due to deliver in January 1998. She requested leave, under both the FMLA and the bank's short term disability program, from her supervisor, Mona Mikhail. She states that she told Ms. Mikhail that she would need to be off work until April 27, 1998 and that this leave time was approved. In January 1998, Ms. Parker states that Prudential, the company which handled leave requests for the bank, approved her leave to continue through April 3, 1998. Ms. Parker's baby was born on January 29, 1998.
In February 1998, Ms. Mikhail spoke with Donna Willis, of the bank's human resources department, about posting Ms. Parker's position, despite her knowledge that Ms. Parker was on approved leave until April 1998. On March 13, 1998, Ms. Parker alleges that she was fired from her position as a National Sales Representative and notified of same by a letter from Donna Willis. Ms. Parker was replaced by a male, Eric Gilmore. She further alleges that there was no valid business reason for filling her position prior to the end of her approved leave and no one had complained that her work was not getting done. Ms. Parker also states that no one called her prior to March 13, 1998 to ask her to return to work early and the bank cannot, therefore, claim any business reason for taking a job action against Ms. Parker. Ms. Parker further alleges that she did search for a comparable position at Bank One during the sixty-day time limit, but none was available.[2]
Defendant Bank One now moves for judgment as a matter of law in its favor on all Plaintiff's claims.
* * *
 II. LAW ANALYSIS A. Summary Judgment Standard.
"Trial courts should award summary judgment with caution." Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 269. In Harless v. Willis Day Warehousing Inc. (1978), the Ohio Supreme Court stated in order for summary judgment to be appropriate, it must appear that:
(1) There is no genuine issue as to any material fact.
 (2) The moving party is entitled to judgment as a matter of law; and
 (3) Reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
54 Ohio St.2d 64, 66.
The moving party bears the burden of informing the court of the basis of the motion and identifying those portions of the pleadings, depositions and other such material which it believes demonstrates the absence of a genuine issue of material fact. Misteff v. Wheeler (1988),38 Ohio St.3d 112, 114; Harless 54 Ohio St.2d at 66. The burden on the moving party may be satisfied by "showing" that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323-325. Furthermore, any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Leibreich 67 Ohio St.3d 266, 269; Williams v. First United Church of Christ (1974), 37 Ohio St.2d 150, 152.
Thereafter, the non-moving party bears the burden of coming forward with specific facts and evidence showing that there is a genuine issue of material fact for trial. VanFossen v. Babcock Wilson Co. (1988),36 Ohio St.3d 100, 117. The non-moving party has the burden "to produce evidence on any issue for which that party bears the burden of production at trial." Leibreich 67 Ohio St.3d at 269; Wing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108, 111 (citing Celotex Corp. 477 U.S. 317,322-323). Therefore, the non-moving party may not rest upon unsworn or unsupported allegations in the pleadings. Benjamin v. Deffet Rentals (1981), 66 Ohio St.2d 86, Harless 54 Ohio St.2d at 66. The non-moving party must respond with affidavits or other appropriate evidence to controvert the facts established by the moving party. Id. Further, the non-moving party must do more than show there is some metaphysical doubt as to the material facts of the case. Matsushita Electric Ind. Co. v. Zenith Radio (1980), 475 U.S. 574.
 B. Defendant Bank One's motion for summary judgment is well-taken.
In analyzing sexual harassment claims brought under R.C. 4112.02(A), Ohio courts look to the statute, R.C. 4112.02(A), its administrative counterpart, Ohio Adm. Code 4112, and to federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code. Anania v. Daubenspeck Chiropractic (App. 2 Dist. 1998),129 Ohio App.3d 516, 519-520. Where there is no direct evidence of discrimination, the familiar burden-shifting framework of McDonnell Douglas v. Green (1973), 411 U.S. 792, is used. Under either method, a plaintiff bears the burden of proving that every employment decision which adversely affected her was the product of discriminatory motive. Goad v. Sterling Commerce, Inc. (June 13, 2000), Franklin App. No. 99AP-321, unreported, at *17, citing Perryman v. Johnson Products Co., Inc. (C.A. 11, 1983), 698 F.2d 1138, 1143.
In a discrimination claim, the plaintiff employee bears the initial burden of establishing a prima facie case of discrimination. Where no direct evidence is available, discriminatory intent may be established indirectly by the four-part analysis set forth in Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, at paragraph one of the syllabus, adopted from the standards established in McDonnell Douglas Corp. The Barker analysis requires that the plaintiff-employee demonstrate "(1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." Id., quoting Barker 6 Ohio St.3d at paragraph one of syllabus.
Upon such proof, the burden shifts to the defendant employer to show legitimate, nondiscriminatory reasons for the employer's action. If the employer meets that burden, the employee must then present evidence which demonstrates that those reasons are a pretext for impermissible discrimination. Cruz v. South Dayton Urological Associates, Inc. (App. 2 Dist. 1997), 121 Ohio App.3d 655, 659-660, citing Plumbers Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm. (1981),66 Ohio St.2d 192, 197-198 and Barker, supra, at paragraph one of the syllabus. Pretext is established in three ways: (1) by proof that the reasons proffered by the employer has no basis in fact; (2) that the reason did not actually motivate the discharge; or (3) that the reason was insufficient to motivate the discharge. Frantz v. Beechmont Pet Hosp. (App. 1 Dist. 1996), 117 Ohio App.3d 351, 359.
Plaintiff asserts retaliatory discharge as well as two types of discrimination, pregnancy and sex/gender, and intentional infliction of emotional distress. Having thoroughly reviewed the entire record, the Court finds that all of Plaintiff's claims fail as a matter of law.
 1. Pregnancy and sex discrimination.
Both claims are made pursuant to O.R.C. 4112.01 et seq. Section4112.02 provides as follows, in relevant part:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
As defined by the statute, the terms "because of sex" and "on the basis of sex" include, but are not limited to:
 because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in division (B) of section 4111.17 of the Revised Code shall be interpreted to permit otherwise.
O.R.C. 4112.01(B).
Plaintiff must establish that she, as a member of a protected class, was discharged, was qualified for her position and was replaced a [sic-by] person not belonging to the protected class. Barker6 Ohio St.3d 146, at paragraph one of the syllabus. For both claims, Plaintiff's argument is essentially the same: she was fired and replaced by a male who could not get pregnant. She presents no direct evidence of either type of discrimination, so the Court must analyze her claims under the burden-shifting analysis of McDonnell Douglas, supra. As was recently noted by Ohio's Fifth District Court of Appeals, on summary judgment, the "need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Payne v. El Siesta Hotel (Apr. 12, 2000), Delaware App. No. 99-CAE-10051, unreported, citing Fennell v. First Step Designs, Ltd. (1st Cir. 1996), 83 F.3d 526, 535. Such an approach is appropriate in this case.
Bank One's motion argues that Plaintiff cannot establish that she suffered an adverse employment action to constitute discrimination in that she remains an employee of Bank One, though on "inactive" status. Bank One asserts that the form letter sent to Plaintiff in March 1998 said only that her FMLA leave had expired and her position would be filled. The letter went on to explain that once she obtained a release to return to work from her physician, Bank One would assist her in finding a comparable position for a sixty-day period. Having never submitted a work release from her doctor, the sixty-day period afforded to Plaintiff has never begun. Plaintiff contends that this argument is "ridiculous and illogical" and maintains that Bank One adopted a "sham" tactic merely to have a defensive argument for litigation purposes. Plaintiff bases this argument on a statement made in deposition by Donna Willis, Bank One Human Resources Director, that Ms. Parker remains on "inactive" status and the bank is waiting until this litigation is concluded before taking any "final step."
The Court agrees with Defendant Bank One that Plaintiff has not been subjected to an adverse employment action, at least by Bank One. First, the evidence before the Court demonstrates that Plaintiff is still an employee of the bank, albeit on "inactive" status. Even construing Donna Willis' statement in a light most favorable to Plaintiff, it in no way establishes that Bank One is asserting a sham argument. As noted by Bank One, Plaintiff is still enrolled in certain benefit programs and is eligible for others and could return to active status at the bank and would be credited for her years of service. Further, other employees of Bank One whose personal situations prevent them from returning to work are on inactive status and have not been terminated. In any case, Plaintiff's argument of "sham" and "cover up" is belied by the fact that Plaintiff was on inactive status with Bank One for at least a year before any suit was filed on Plaintiff's behalf. Second, the March 13, 1998 letter did not terminate Plaintiff's employment, regardless of her interpretation. It clearly contemplated her return to work and outlined the steps that Plaintiff needed to take to do so, i.e., securing a physician's release and notifying the bank of her return date, and providing her with a contact in the human resources department. The letter also noted that the bank would assist her in finding a comparable position during a sixty-day period, but that it would be her responsibility to take the initiative in that search.
Plaintiff is obviously a female, a protected class member, and was absent from her job due to her pregnancy. Her position was filled by a male, Eric Gilmore, who could not get pregnant. Were the Court to have found that she was subject to an adverse employment action, Plaintiff could arguably meet the minimal burden of showing discriminatory intent. However, Plaintiff's claims would still fail because Bank One has demonstrated a [sic] legitimate business reasons for sending the March 13, 1998 letter to Plaintiff and she is unable to show that these reasons are pretextual.
Defendant Bank One asserts that it was legally entitled to post Plaintiff's position at the termination of her FMLA leave. Under the FMLA, an employee is entitled to take "a total of 12 workweeks of leave during any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter." See 29 U.S.C. 2612(a)(1). The FMLA's implementing regulations provide that, subject to medical certification: "(a) An eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12-month period for the following reasons, among others: "(1) The birth of the employee's son or daughter, and to care for the newborn child; . . . (4) Because of a serious health condition that makes the employee unable to perform one or more of the essential functions of his or her job." 29 C.F.R. § 825.200(a)(1)-(4). The regulations, in pertinent part, define "serious health condition" as:
 (a) [A]n illness, injury, impairment, or physical or mental condition that involves:
 (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility,
 (2) Continuing treatment by a healthcare provider . . . includ[ing] any one or more of the following:
 (i) A period of incapacity (i.e. inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days . . .
 (ii) Any period of incapacity due to pregnancy, or for prenatal care.
29 C.F.R. § 825.114(a).
Ms. Parker's twelve-week leave period began, as expressly noted in the written explanation of medical leave policies under both the FMLA and Bank One's short-term disability policy provided to Plaintiff, on the date she first needed to be off work. That date was December 12, 1997, when her physician excused her from work due to complications with her pregnancy. In fact, on January 8, 1998, Prudential notified Ms. Parker that her twelve-week leave period would start as of December 12, 1997. Twelve weeks from the date of December 12, 1997 is March 6, 1998. Further, on February 25, 1998, Prudential notified Plaintiff that her short-term disability benefits through Bank One's policy would be authorized through March 12, 1998 only.
The regulations accompanying the FMLA specifically address an employee's rights upon returning to work from a period of authorized FMLA leave: "(a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214(a). However, the regulations also clearly state than an employee who cannot return to work at the end of the approved leave is not entitled to job restoration: "(b) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."29 C.F.R. § 825.214(b). Clearly, on March 13, 1998, when the form letter was sent to Plaintiff, both her FMLA and short-term disability leaves had expired. She had neither returned to work at the time, nor had she even contacted her employer to discuss a return to work. At that point, Bank One was legally entitled to post her position, and was not even required to offer her the opportunity to return to a comparable position. Bank One has clearly met its burden of showing a legitimate business reason for sending the March 13, 1998 letter.
On the evidence presented, the Court finds that Plaintiff cannot establish pretext. Ms. Parker argues that there was no valid business reason for filling her position because no one had complained that her work was not getting done, there was no slippage of work in the department and no temporary employee was hired to cover her duties. She further argues that she had performed well in her job and was fully qualified for her position.
As noted above, Plaintiff can establish pretext in three ways: (1) by proof that the reason proffered by the employer has no basis in fact; (2) that the reason did not actually motivate the discharge; or (3) that the reason was insufficient to motivate the discharge. Frantz v. Beechmont Pet Hosp. (App. 1 Dist. 1996), 117 Ohio App.3d 351, 359. Plaintiff first contends that Defendant Bank One has offered no legitimate business reason for its actions whatsoever. As the Court has already found, Defendant Bank One has met its burden in that part of the required analysis. Second, Plaintiff argues that the only reasons Bank One could have offered would be that Ms. Parker was not qualified and not performing acceptably, or that she was replaced due to the work volume in her department.
Plaintiff does not refute, however, that under the FMLA, the bank was legally entitled to post her position when she failed to return to work after the expiration of her twelve-week leave period. That proffered reason clearly had a basis in fact and was sufficient to motivate the posting and filling of her position. Though not expressly stating that the proffered reason did not actually motivate Bank One's actions, Plaintiff has alleged that an inference can be made that Bank One had decided to terminate her as early as January 1998, while still on approved leave. She bases this contention on the following: that on March 13, 1998 (1) she had no job to return to at Bank One, (2) she was not receiving a salary, (3) she was not receiving benefits, and (4) she was not told of the change in supervisor in her department. The Court does not agree. Even if all these allegations are true and construing them in a light most favorable to the Plaintiff, they do not create a question of fact as to pretext. All of the allegations reference a March 1998 time-frame and demonstrate nothing about what may or may not have been a motivating factor for Bank One in January 1998. Further, as the Court has already noted, Bank One offered Plaintiff an opportunity to obtain a comparable position within the bank so that she could continue her employment, something they were in no way obligated to do. Providing more opportunities and options than required under law can hardly be deemed discriminatory actions from which it can be inferred that Bank One's proffered reason for posting Plaintiff's position was a pretext or coverup.
 2. Retaliatory discharge.
The Court finds that Plaintiff's retaliation claim also fails as a matter of law. Plaintiff alleges that she was discharged in retaliation for engaging in two different protected activities: making a formal complaint of sexual harassment and for taking maternity leave. The evidence in the record does not support this claim, however.
To establish a prima facie case of retaliation, a plaintiff must prove that: 1) the plaintiff was engaged in a protected activity; 2) the defendant knew of the plaintiff's participation in the protected activity; and 3) the alleged retaliatory action followed the plaintiff's participation in the protected activity sufficiently close in time to warrant an inference of retaliatory motivation. Payne v. El Siesta Hotel (Apr. 12, 2000), Delaware App. No. 99-CAE-10051, unreported, at *5; Neil v. Hamilton County (App. 1 Dist. 1993), 87 Ohio App.3d 670. Once a prima facie case is established, the same burden-shifting analysis as in discrimination cases is then applied. As above, Defendant Bank One argues that Plaintiff was not discharged and the Court agrees. However, even using the March 13, 1998 letter and subsequent posting of Ms. Parker's position as the alleged retaliatory action, Plaintiff is unable to support an inference of retaliatory motivation.
With regard to her complaint of sexual harassment, even Plaintiff acknowledges that Ms. Willis in the human resources department was receptive to her complaint and performed an investigation. Doug Harvey was subject to disciplinary action and was transferred out of Ms. Parker's department. Further, having found that Ms. Parker had been denied a promotion by Mr. Harvey, Bank One promoted her to the National Sales Representative position she held when she went on maternity leave. Plaintiff presents no evidence whatsoever of an adverse tangible change in duties or working conditions as a result of making her complaint of sexual harassment. Finally, the Court finds that no reasonable factfinder could conclude that a harassment complaint made in early 1996 is sufficiently close in time to the March 1998 action alleged, especially where a promotion occurred in the intervening time, to warrant an inference of retaliatory motivation on the part of Bank One.
There is likewise no support for Plaintiff's claim that Bank One retaliated against her for taking maternity leave. As already noted, the bank was legally entitled to post her position when she failed to return to work at the expiration of her FMLA leave. Plaintiff relies solely on the assertion that she was on approved maternity leave on March 13, 1998. This is not so. At the time the March 13, 1998 letter was sent to Plaintiff, she was already beyond the time period in which her job was protected under the FMLA. Bank One has established that it was legally entitled to take the actions it did and Plaintiff was no longer engaged in protected activity at that time.
 3. Intentional infliction of emotional distress.
To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements:
 (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" . . .; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it." (Internal citations omitted).
Stanley v. City of Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912, unreported, at *8-*9, citing Wigfall v. Soc. Natl. Bank (1995),107 Ohio App.3d 667, 675-76. See also, Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen Helpers of America (1983),6 Ohio St.3d 369, 374; Restatement of the Law 2d, Torts (1965) 71, Section 46(1).
Due to discovery abuses by Plaintiff, this Court imposed sanctions upon Plaintiff as follows:
 Plaintiff is hereby prohibited from introducing into evidence and precluded from supporting her claim of intentional infliction of emotional distress with evidence of any discussions with her physician relating to her alleged mental and/or emotional distress, the factors or circumstances which she alleges are the cause of that distress, or the circumstances related to her use of the prescription drug Zoloft.
(Decision, Order and Entry of March 20, 2000, pp. 4-5). The parameters of this sanction were reiterated by the Court in decisions rendered June 2, July 13, and August 2 and will not be repeated again herein. The sanction effectively prevents Plaintiff from presenting any evidence of the causation of her alleged mental distress, thus she is unable to establish that there remains a genuine question of material fact on an essential element of her claim and it must also fail as a matter of law.
* * *
 III. CONCLUSION
Accordingly . . . Defendant Bank One's Motion for Summary Judgment is . . . SUSTAINED.
Counsel should take note this decision is also in the form of a judgment entry. Therefore, the time for prosecuting an appeal to the Second District Court of Appeals must be computed from the date upon which this decision and entry is filed.
The above captioned case is ordered terminated upon the records of the Common Pleas Court of Montgomery County, Ohio.
Costs are to be paid by the Plaintiff.
On appeal, Parker presents the following two assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.
II. THE TRIAL COURT ERRED IN SANCTIONING APPELLANT.
We first note that a motion for summary judgment is an assertion by the moving party that no genuine issue of material fact exists, and that the remaining questions of law can only be decided in movant's favor. Civ.R. 56(C). The trial court must "construe the evidence in a light most favorable to the party opposing the motion." Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 47; Civ.R. 56(C). The propriety of summary judgment, therefore, is a question of law, and an appellate court reviews a trial court's grant of summary judgment de novo. Children's Med. Ctr. v. Ward (1993), 87 Ohio App.3d 504, 508. The record in this tenacious and sometimes bitterly contested case (including motions for sanctions against parties and attorneys on both sides) is massive, but we have reviewed it and find that the evidence fully supports the decision of the trial court to grant summary judgment to the appellees. We approve and adopt the decision of the trial court and incorporate it here as part of our opinion and decision.
We are particularly moved to find no liability on the part of the appellees since it is clear from the record that Parker has not actually been terminated but is on inactive status and may quite possibly return to active status, just like other employees on inactive status have returned, when and if she takes the required steps to apply for it. We find no basis for a wrongful termination by the appellees since there is no termination yet.
The second assignment of error involves a sanction against Parker by the trial court for an egregious violation of the discovery rules. The trial court's sanction was to prevent Parker from presenting evidence either by herself, her physician, or any other appropriate professional, as to the cause of her alleged depression. We find this issue moot since the appellees cannot be held liable. It is of no matter what Parker would present as evidence of any damages she claims to suffer.
Both assignments of error are overruled and the judgment is affirmed.
 ___________________ YOUNG, J.
WOLFF, P.J. and FAIN, J., concur.
[1] General Electric Capital Corporation and GE Card Services were also defendants, but Parker's appeal against them was voluntarily dismissed pursuant to App.R. 28, which motion this court sustained on February 6, 2001.
[2] [By the Court of Appeals] The record is devoid of any evidence that supports this allegation. Rather, the evidence is to the contrary.